### John J. Snyder, Executor, v. Charles A. Zeller.
#### Gen. No. 4,285.

1. VALUE OF SERVICES—*how, proved.* The value of services when sought to be proved by a witness other than the plaintiff, should be shown by submitting to such witness hypothetical questions based upon the testimony given by other witnesses in the case, and it is error to permit such witness to place a value upon such services predicated upon a manner of performance not shown by the evidence in the cause.

Contest upon claim against deceased's estate. Appeal from the Circuit Court of Woodford County; the Hon. GEORGE W. PATTON, Judge, presiding. Heard in this court at the October term, 1903. Reversed and remanded. Opinion filed March 14, 1904.

ELLWOOD & MEEK and BARNES and MAGOON, for appellant.

W. H. FOSTER and JOSEPH A. WEIL, for appellee.

MR. JUSTICE FARMER delivered the opinion of the court. Nicklas Snider died testate at his home in Woodford

County, Illinois, on the 31st day of December, 1900, from the effects of a cancerous growth on his nose and face with which he was afflicted for a considerable period of time prior to his death.   John J. Snyder was named as executor in his will and after the death of the testator duly qualified as such.   Charles A. Zeller, appellee, on the 6th day of October, 1902, filed a claim against the estate of Nicklas Snider for services claimed to have been rendered him in washing and dressing the affected parts, from February 6 to July 30, 1900, a period of twenty-one weeks at $15 per week, making a total of $315.   No action appears to have been taken by the executor with reference to this claim until March 10, 1903, when appellee filed another or amended claim for the same services in which he placed their value at $50 per week, or a total of $1,050.   Why this change in the amount appellee charged for his services was made, does not appear.   A hearing was had in the County Court without a jury, resulting in the allowance of the claim in the sum of $315 as of the seventh class.   The executor appealed from this judgment to the Circuit Court where the cause was tried by a jury, resulting in a verdict in favor of the claimant for $420, upon which the court rendered judgment and the executor appealed to this court.

It is insisted by appellant, first, that under the evidence the claim should have been disallowed entirely, and, second, that if appellee was entitled to a judgment against the estate he was not entitled to as much as he obtained judgment for in the Circuit Court, and it is therefore excessive. As the case must go back to the Circuit Court for another trial, we express no opinion upon the first proposition.

The only proof offered by appellee as to the value of the services he claimed to have rendered the deceased, was the testimony of Dr. Bradley, who treated the deceased for about a month in February or March, 1900, and performed a surgical operation on him at a hospital in Peoria.   He testified that he gave appellee, who was not a trained nurse, directions as to how he should wash and dress the deceased's face and nose, but was not present at any time when he

performed these services and was of course unable to testify that he performed them as directed. He was allowed to testify over appellant's objections that if the services were performed as he directed appellee, they were worth $50 per week. There was no evidence that the services were performed in accordance with Dr. Bradley's directions and it was therefore erroneous to allow this testimony. The doctor knew the nature and character of the deceased's disease and how he was affected. If it had been desired to get his opinion as to the value of appellee's services in washing and dressing the affected parts, a hypothetical question should have been put to him, based upon the testimony of witnesses who testified they saw appellee performing the services for Snider, as to what they saw Zeller do, how he did it and the time occupied in rendering the service. A number of witnesses testified to being present when appellee rendered the services to the deceased and the proof should have been confined to the value of the services as actually performed, and it was improper to allow testimony as to their value if they had been performed as the witness directed them to be, and thought they should have been. During the time appellee was rendering the services to Mr. Snider, he was not confined to his bed but was able to be up and around so that he did not require constant nursing and attention. The time occupied in cleansing and dressing the affected parts is all the time, so far as the evidence shows, that was given the deceased by appellee. Three witnesses, two of them doctors and one a nurse having had experience in hospital work, testified for appellant as to their opinion of the value of appellee's services. Dr. Wyatt testified he had had experience in his practice in similar cases to that of Nicklas Snider, and in the employment of nurses, and that from a dollar to a dollar and a half for each dressing would be the reasonable value of such services. Dr. Mansfield testified that he began to treat Nicklas Snider about the last of July or first of August, 1900, and that for a few months prior to that time it was probably necessary to cleanse and dress the affected parts

twice a day, and after describing the method of doing this, stated that such services performed by a trained nurse would be reasonably worth two dollars per day.   Louis I. Jones testified he had had seven or eight months experience in a hospital in Chicago in nursing, and some experience outside; that he lived four and one-half miles from Nicklas Snider and attended to him after appellee ceased caring for him, and testified that it was worth $15 per week to care for him.

While the judgment was for much less than Dr. Bradley testified appellee's services would have been worth if he performed them according to his directions, it is also for an amount which equals $20 per week for the time claimed by appellee, which was about the highest figure mentioned by any one of the three witnesses for defendant, and we are therefore unable to say that the jury was not to some extent influenced by the testimony of Dr. Bradley in arriving at their verdict.   No error was committed by the court in the modification of appellant's seventh instruction, but believing the verdict and judgment to be excessive under the competent evidence in this case, it is reversed and the cause remanded.

*Reversed and remanded.*