UNION TRACTION COMPANY OF INDIANA *v.* McVEY,
ADMINISTRATRIX.

[No. 22,993.   Filed December 19, 1916.]

CARRIERS.—*Injuries to Passenger Boarding Interurban Car.—Place of Boarding.—Complaint.—Variance in Proof.*—Where decedent indicated a desire to board a slowly moving interurban car and to become a passenger thereon and was expressly invited to do so by the conductor who, while decedent was on the steps of the car and about to enter the rear vestibule, gave a signal to the motorman to go ahead, and the speed of the car was suddenly increased, causing decedent to be thrown off the steps and fatally injured, the action of the conductor in signaling for an increase of speed without giving decedent reasonable opportunity to board the car in safety was negligent; and a judgment for decedent's death will not be reversed for variance in proof, even though the undisputed evidence showed to be untrue an allegation in the complaint that the accident occurred at a regular stopping place for the receiving and discharging of passengers, where the case was tried on a theory under which the exact place of decedent's injury became unimportant and where there were instructions which precluded the jury from being misled by the variance, if any, in the proof.

From Howard Circuit Court; *William C. Purdum,* Judge.

Action by Effie McVey, administratrix of the estate of Lewis McVey, deceased, against the Union Traction Company of Indiana.   From a judgment for plaintiff, the defendant appeals.   *Affirmed.*

*J. A. VanOsdol* and *Blacklidge, Wolf & Barnes,* for appellant.

*Bell, Kirkpatrick & Voorhis* and *Overson & Manning,* for appellee.

SPENCER, J.—This is an appeal from a judgment for $6,200 recovered by appellee for the death of her decedent, which is alleged to have been caused by negligence on the part of appellant. Omitting the formal averments, the complaint charges, in substance, that on September 18, 1913, and long prior thereto, appellant, as the operator of an electric passenger railway system between the city of Logansport and the city of Kokomo, maintained a "Y", or switch, at the intersection of Taylor and Union streets in said city of Kokomo, over which it backed its cars from a passenger station about two blocks south before turning west onto the Logansport line; that on the day in question appellee's decedent went to appellant's interurban station for the purpose of becoming a passenger on one of its cars on the Logansport line, and there saw that the car had left the station and was backing north toward the "Y", whereupon he went to the intersection of Taylor and Union streets for the purpose of becoming a passenger on said car at that point; that when he reached said intersection the car had backed east on Taylor street and was then moving slowly westward over the east switch of said "Y" at a speed of four miles per hour; that "while said car was moving, as alleged, slowly west on Taylor street and over said switch, the conductor was in the rear vestibule. That as said car was moving slowly over said switch, as aforesaid, the decedent came into Taylor street and near said car, to-wit, six feet from said car, and said, 'Frank, I want to get on, let me on,' and while decedent was so situated, defendant company, by its agent and employe then and there authorized to control its said car and manage the ingress and egress of passengers to said car, its said conductor, did then and there motion to the decedent to get on

said car and did then and there wave his hand to decedent to get on said car and did then and there call to said decedent and said 'get on'; * * * that the intersection of Union and Taylor streets and the place where plaintiff's decedent was killed and where he attempted to board said car was a regular stopping place, and that defendant company on said date and for more than a year previous thereto had permitted passengers to get on and off of its cars at said point; * * * that while said car was moving slowly, as aforesaid, and after the conductor had extended the invitation to him to get on, as heretofore alleged, the decedent stepped upon the step of said car and was in the act of mounting to the rear vestibule, * * * and while the conductor was in the rear vestibule and looking at decedent, the defendant company by its duly authorized agent and servant, the conductor, did then and there negligently and carelessly give the motorman the signal to 'go ahead', said signal being given before decedent had mounted said steps and reached the vestibule and place of safety, and plaintiff alleges that said motorman, in answer to said conductor's bell, then and there and while decedent was in the act of mounting the steps, carelessly and negligently increased the speed of said car with a quick and sudden motion, and by reason thereof decedent was thrown off of said steps with great force and violence," to his injury and death.

In support of its contention that the circuit court should have sustained its motion for a new trial, appellant earestly insists that, while the issues were made up on the theory that the place at which decedent attempted to mount the car was a regular stopping place for the receiving and discharging of passengers, the undisputed evidence shows that

the attempt was made after the car had left the stopping place and had proceeded nearly a hundred feet therefrom; that this variance in the proof is fatal for the reason that the duties of a carrier at a place other than a regular station are not the same as at the usual stopping places. In brief, this contention is: (a) that there is no duty at such place to stop to give opportunity and time to get aboard; (b) that there is no duty to operate the car in any other than an ordinary manner, which, in this case, included the increasing of speed; and (c) that in such case an invitation to get on is not an assurance of safety, but at most an invitation to take an obvious risk which included the risk of an increase of speed.

We need not consider in detail any of the elements of this contention, however, for the reason that the case appears to have been tried on a theory under which the exact place of decedent's injury is relatively unimportant. That theory is well summarized in appellee's contention that where it appears: (a) that the car was moving slowly; (b) that the injured person had indicated a desire to become a passenger thereon; (c) that the conductor in charge had extended an express invitation to such person to become a passenger; and (d) that he became a passenger in response to such invitation and was actually on the steps of the car mounting to the vestibule, the duty then devolved on the conductor, *knowing these facts,* not to increase the speed of the car in a quick or sudden manner without giving the passenger a reasonable opportunity to mount the steps in safety, whether the place happens to be at the precise point known as a regularly stopping place or near there; that a violation of such duty constitutes actionable negligence. The authorities sustain this contention. *Stoner* v. *Pennsylvania*

*Co.* (1884), 98 Ind. 384, 49 Am. Rep. 764; *Citizens St. R. Co.* v. *Merl* (1900), 26 Ind. App. 284, 291, 59 N. E. 491; *Moffitt* v. *Connecticut Co.* (1913), 86 Conn. 527, 534, 86 Atl. 16; 1 Nellis, Street Railways (2d ed.), §§301, 302, and cases cited.

Some of the instructions given to the jury affirmatively expressed this principle of law, while others, particularly those given at the request of appellant, so effectively precluded a recovery by appellee in the event that she failed to sustain with proof any element of her premise that no question can arise as to the theory on which the case was tried. For example, the jury was told by appellant's instruction No. 4 that "if the conductor did not know of the decedent's presence and that he was attempting to get on the car, until he was in the act of falling, there can be no recovery, even if the car was moved quickly and suddenly on account of the conductor's act. On the other hand, even if the conductor knew that the decedent was attempting to board the car, but did not cause the car to be moved quickly and suddenly, then there can be no recovery even if the car was moved quickly or suddenly by some other cause. If the plaintiff's decedent fell because of any other cause than the sudden movement of the car, negligently caused by the conductor after he knew the decedent was attempting to board the car, then there can be no recovery in this case and your verdict must be for the defendant."

Another instruction told the jury, in substance, that there was no implied invitation to the decedent to board appellant's car at the place of his injury, and that if he attempted there to board said car without an invitation directly made by appellant's conductor, he assumed the risk and there could be no recovery.

Furthermore, appellant's instruction No. 12 clearly recognizes the rule of law relied on by appellee, and, when considered with other instructions given, nullifies any suggestion that the jury could have been misled by the variance, if any, in the proof. The instruction to which we refer is as follows: "Before there can be a recovery on account of injury to a person attempting to board an interurban car at any place that is not a regular stopping place, it must be shown, by a fair preponderance of the evidence, that the defendant's servant in charge of said car had actual knowledge of the fact that such person was attempting to board the car, and thereafter did some negligent act which caused injury to the person so attempting to board the car. So, in this case, before there can be a recovery, it must be shown, by a fair preponderance of the evidence, that defendant's conductor, in charge of said car, knew that the plaintiff's decedent was attempting to board the said car, and thereafter negligently caused the speed of said car to be increased in such a sudden manner as negligently to throw the plaintiff's decedent from said car and cause his injury."

The instructions as a whole stated the law as favorably to appellant as it was entitled and there is evidence in the record sufficient to sustain the finding of the jury as to each material issue on which appellee had the burden of proof. This conclusion serves, in substance, to dispose of every question presented by appellant and renders it unnecessary to consider each specification in detail.

No error appearing, the judgment of the trial court must be and is affirmed.

NOTE.—Reported in 114 N. E. 438.