AUTOMOBILE UNDERWRITERS, INCORPORATED v. SMITH

[No. 19,030. Filed April 12, 1960. Rehearing dismissed June 9, 1960. Transfer denied February 2, 1961, with opinion 171 N. E. 2d 823.]

456

*Steers, Klee, Jay & Sullivan,* of Indianapolis, for appellant.

*Clair McTurnan* and *Lawrence H. Hinds,* both of Indianapolis, for appellee.

Ax, J.—This is the second appeal to this Court in an action to recover damages for alleged fraud in obtaining release of an alleged cause of action for personal injuries. The case was here before [*Automobile Underwriters, Inc.* v. *Smith* (1956), 126 Ind. App. 332, 133 N. E. 2d 72] on the same complaint, demurrer, answers, and the same motions to withdraw causes and the same motions for directed verdict as before. The trial Court's

rulings were against the demurrers and motions in each trial.

On July 23, 1945, appellee was riding in a motor vehicle operated by her husband, driving easterly on a county highway known as Normandy Pike, a county highway near Tipton, Indiana, which highway intersected with another county road designated as Mary Hamm Road.

A truck owned by Fear Campbell Poultry Company, then being operated by one of its employees, was proceeding southerly on the Mary Hamm Road approaching the intersection with Normandy Pike. The two vehicles collided at the intersection wherein the appellee alleged to have sustained personal injuries. The Fear Campbell Poultry Company was insured with the State Automobile Insurance Association for whom the appellant herein is the attorney in fact. The Association had a policy which was in full force and effect on the date of accident.

On September 26, 1945, an adjuster for the appellant called at appellee's home and settled with the appellee and her husband, Lawrence E. Smith, for their respective damages, both personal and property. The appellant executed and delivered its draft in the sum of Four Hundred ($400.00) Dollars to the appellee and her husband in full settlement therefor, which draft was not cashed until October 19, 1945.

Almost six years after the occurrence of the accident, appellee filed her action for damages by reason of alleged fraud and deceit made by the insurance adjuster in securing the release executed by appellee and her husband for Four Hundred ($400.00) Dollars. The complaint alleged that the appellant company, by its agent, was intent upon depriving the appellee of a valid and just claim and made representation of fact

and knowledge which the defendant at that time knew to be false and untrue in that the appellant had experience in matters such as this; that the agent informed appellee that her recovery was in the process of being complete; that appellant's agent was skilled in the law and prepared for plaintiff's own good to render her legal advice and that under a similar situation any lawyer would advise her the same as he would; that she did not need a lawyer; that the appellee would not be entitled to compensation for her injuries because appellee had an accident insurance policy covering doctor bills, etc.; that appellee herself was not entitled to anything from appellant or the said Fear Campbell Company by reason of said collision; that appellee could safely rely upon such statements.

Trial was had by jury resulting in a verdict favoring appellee in the sum of Five Thousand ($5000.00) Dollars.

The prior appeal to this court resulted in a reversal of the trial court and the cause was remanded for a new trial. A new trial again resulted in a verdict in favor of appellee in the sum of Seven Thousand Five Hundred ($7500.00) Dollars, and the appellant filed a Motion for New Trial, which motion was overruled, and this appeal followed.

On appeal to this court appellant assigns as errors the overruling of appellant's demurrer to appellee's complaint, and the overruling of appellant's motion for new trial. Under this second assignment of error sixty-five separate errors, or causes, are set out.

The appellant's first assignment of error was the overruling of the demurrer to the complaint on the

grounds that the facts alleged failed to state a cause of action. If there be error in overruling a demurrer and that error is harmless as not to prejudice the adverse party, there is no necessity to review the question on appeal. *Lane* v. *Gugsell* (1943), 113 Ind. App. 676, 47 N. E. 2d 835. But where a complaint is clearly defective, and a demurrer is entered thereto, the whole of the record must be examined to determine if the cause was fairly tried and determined in the court below. *McTurnan* v. *Dailey* (1938), 214 Ind. 159, 14 N. E. 2d 913. It follows therefore that the question of whether or not there appears in the complaint a substantial defect which would act to the prejudice of appellant must be answered.

The rule in Indiana on construing a pleading in the face of a demurrer is to give that pleading a liberal construction in favor of the pleader. *Lincoln Operating Co.* v. *Gillis* (1953), 232 Ind. 551, 558, 114 N. E. 2d 873. In this light the various essential allegations of the complaint will now be considered.

The complaint alleges that appellee sustained injuries due to the negligent operation of a truck driven by the appellant's assured and that she would have had a valid claim against the assured. This is a necessary allegation. *Automobile Underwriters, Inc.* v. *Rich* (1944), 222 Ind. 384, 53 N. E. 2d 775. The allegations continue by making the claim that appellant's agent made false and untrue representations with knowledge of such falsity to the appellee concerning her injuries and her right to recover damages therefor. It was further alleged that appellant's agent represented to appellee that he was experienced in such matters and that appellee had no need of consulting a lawyer. Finally, the allegations set forth the charge

that through such false representations the agent thereby induced the appellee to sign a settlement paper and that such inducement was for the willful purpose of depriving said appellee of her just claim.

The appellant's basic argument rests upon the case of *Automobile Underwriters, Inc.* v. *Rich, supra,* which was originally decided by the Supreme Court in 1944, and subsequently brought to this court, which in essence reaffirmed the original holding of the Supreme Court. *Automobile Underwriters, Inc.* v. *Rich* (1946), 116 Ind. App. 511, 64 N. E. 2d 305. This case, however, is clearly distinguishable in that the cause was not taken out in either decision of that case upon demurrer. In both appeals both the Supreme Court and this court held that the evidence was not sufficient to sustain the verdict. In neither was the overruling of the demurrer held error. In fact, the Supreme Court held that the overruling of the demurrer was not error.

The elements necessary to state a cause of action for fraud are representations of material facts and reliance thereon, falsity, scienter, deception and injury. *Rochester Bridge Co.* v. *McNeill* (1919), 188 Ind. 432, 122 N. E. 662; *Baker* v. *Meenach* (1949), 119 Ind. App. 154, 84 N. E. 2d 719; *Holder* v. *Smith* (1952), 122 Ind. App. 371, 105 N. E. 2d 177. The rule applicable in the case at bar corresponds similarly to *Haddock* v. *Osmer* (1897), 153 N. Y. 604, 608, 47 N. E. 923, as quoted in *Rochester Bridge Co.* v. *McNeill, supra:*

"Where a party represents a material fact to be true to his personal knowledge, as distinguished from belief or opinion, when he does not know whether it is true or not and it is actually untrue, he is guilty of falsehood, even if he believes it to be true, and if the statement is thus made with the intention that it shall

be acted upon by another, who does so act upon it to his injury, the result is actionable fraud."

Also, *Automobile Underwriters, Inc.* v. *Rich, supra,* (1944), reaffirmed the statement made in *Rochester Bridge Co.* v. *McNeill, supra,* to the effect that:

"The mere fact that a statement takes the form of an expression of opinion is not always conclusive, for, as the question is now presented, it must be interpreted by the facts and surrounding circumstances shown by the complaint. The rule that actionable fraud cannot be based upon the mere expression of an opinion has been qualified until now an expression of an opinion may amount to fraud, where it is a mere contrivance of fraud, or if the person to whom it was expressed has justly relied on it and has been misled, or when it is coupled with other circumstances."

The complaint, in the light of the foregoing considerations, therefore, sufficiently includes the necessary allegations and the demurrer was properly overruled.

The appellant's second assignment of error was that the court erred in overruling a motion for a new trial. Under this assignment, as allowed by Supreme Court Rule 2-6, some sixty-five separate errors, or causes, are set out.

The first cause states that paragraph No. 10 of complaint should have been stricken before trial. The same situation presents itself here as it did in the consideration of the demurrer, therefore, for reasons already stated the motion to strike out part of the complaint was properly overruled. The appellant contends that the allegations of paragraph No. 10 of the complaint were mere opinions and should not have been submitted to the jury. *Automobile Underwriters, Inc.* v. *Rich, supra,* (1944), so heavily relied upon by appellant, restricted its ruling to the facts and did not

state that circumstances could not arise in which similar assertions would amount to actionable fraud.

Cause number two stated that the court erred in overruling the appellant's motion for a directed verdict at conclusion of appellee's evidence. This is of no avail to appellant, because an overruled motion for a directed verdict at the close of the appellee's evidence followed by introduction of appellant's evidence is a waiver to any consideration of the motion. *Taylor* v. *Fitzpatrick* (1956), 235 Ind. 238, 132 N. E. 2d 919; *Louisville & N. R. Co.* v. *Revlett* (1946), 224 Ind. 313, 65 N. E. 2d 731.

Causes numbered 3, 4, 6, and 7, are herein considered together. These causes are as follows:

> No. 3—The Court erred in overruling the defendant's motion for directed verdict at the conclusion of all of the evidence.
>
> No. 4—The Court erred in overruling the defendant's motion made at the conclusion of all of the evidence to withdraw from the consideration of the Jury certain charges and allegations in plaintiff's complaint.
>
> No. 6—The verdict of the jury is not sustained by sufficient evidence.
>
> No. 7—The verdict of the jury in favor of appellee was contrary to the principles of law applicable to this case.

In considering these causes we have considered the evidence most favorable to the appellee as this court will not weigh conflicting evidence. As stated above, in order for appellee to prove her cause of action, two elements are necessary: (1) She must prove that she had a cause of action against Fear Campbell Co., and, (2) by reason of the fraudulent representation of appellant or its agent, she was de-

prived of her cause of action and resulting damages from Fear Campbell Co.

In regards to element one, the appellant made no argument that appellee had failed to prove her right to damages for negligence alleged against Fear Campbell Co. Hence, under the rules, appellant has waived this point. Supreme Court Rule 2-17. Suffice it to say, however, there was conflicting evidence introduced concerning the alleged negligence of the Fear Campbell driver, from which evidence the question could have been submitted to the jury for its determination, as it was properly a question of fact for the jury to weigh and determine. Because of the verdict for appellee, we assume, therefore, that the jury weighed this conflicting evidence and found that appellee's injuries were caused by the alleged acts of negligence of the tort-feasor who was the driver of the Fear Campbell truck.

Appellant again cites as authority *Automobile Underwriters, Inc.* v. *Rich, supra,* (1944), as ruling in contending that the verdict should have been directed for the appellant at the close of appellee's evidence and at the close of all the evidence and that paragraph No. 10 of the complaint should be for the most part withdrawn from the jury's consideration. The circumstances of the signing of the release appear far different in that case from those in the case at bar. In the *Rich* case the party charging fraud was a twenty-seven year-old woman, in charge of her faculties, with apparently full knowledge of the facts, who signed the release in the presence of her family. In the present case the evidence most favorable to the appellee shows that she is an elderly woman, that she was apparently ill at the time of the alleged fraud, that she had no other advice than that of the accused and her

husband, who had a direct interest of his own in the settlement, and at the moment of signing she was lying down due to her weakened condition, and was unable to see or understand the nature or the contents of the release. This evidence further shows that appellee was in a confused state of mind, thinking that the adjuster's name was Goodpasture rather than Pettijohn. Appellee testified that the adjuster arrived between 9:00 A. M. and 9:30 A. M., while she was attempting to prepare for herself some breakfast, and that he remained at her home until past noon. Appellee testified that she had broken her glasses in the accident, and that when she signed the releae she could not see what was stated upon it. The medical report, which appellee stated she could not read, described her injuries to be: bruises right breast and right side and knee, broken ribs on right side No. 8-10 and 12, bruises both knees and lower right leg, and mild concussion for two or three days following accident. This report further states that appellee's disability would be total for four months and partial for six months. According to further testimony, the adjuster, with said report in his possession, told appellee that she had no injuries, and that he was sure that she would be all right. Some of the testimony was contradicted, but the truth of the witnesses was a matter for the jury. Any conflict of testimony will not be regarded by this court in that it is settled law that this court does not weigh evidence. *Haley* v. *Williams, Trustee etc. et al.* (1954), 125 Ind. App. 377, 123 N. E. 2d 921; *First Bank & Tr. Co., etc., Extr.* v. *Tellson* (1954), 124 Ind. App. 478, 118 N. E. 2d 496; *Gray* v. *Hawke Motor Sales, Inc.* (1953), 124 Ind. App. 74, 112 N. E. 2d 459; *Heed, Rec.* v. *Gummere Admx.* (1922), 192 Ind. 227, 136 N. E. 5.

The person alleging the fraud must prove by a pre-

ponderance of the evidence the essential elements of the cause. *Guydon* v. *Taylor* (1945), 115 Ind. App. 685, 60 N. E. 2d 750; *Edwards* v. *Hudson* (1938), 214 Ind. 120, 14 N. E. 2d 705; *Holder* v. *Smith, supra.*

Under the evidence of the case record, the jury could well believe that the adjuster for appellant materially misrepresented the facts when he told appellee of his knowledge of the extent of her injuries and her lack of right to recover; that the statements were made with knowledge of their falsity or lack of knowledge of their truth, with the intent to deceive the appellee, and to deprive her of any claim she might have against the appellant's insured. In *Culley* v. *Jones* (1905), 164 Ind. 168, 176, 73 N. E. 94, the court stated:

> "The design of the law is to protect the weak and credulous from the wiles and stratagems of the artful and cunning, as well as those whose vigilance and sagacity enable them to protect themselves."

Under causes 5 and 20 through 48, appellant mainly contends that the damages of $7,500 are excessive and argues that the allowing of testimony of appellee concerning said damages allowed for recovery of consequential damages subsequent to the injury. The trial court was correct in allowing the testimony because the damages for fraud are the natural and proximate consequences of the acts complained of. *Linderman Machine Co.* v. *Hillenbrand Co.* (1921), 75 Ind. App. 111, 127 N. E. 813; *Hartford Life Ins. Co.* v. *Hope* (1907), 40 Ind. App. 354, 81 N. E. 595, 81 N. E. 1088. Stated another way, the damages are the result of the original tort that could have been reasonably foreseen by one making a settlement when considering the circumstances. *Rochester Bridge Co.*

v. *McNeill, supra.* From the evidence of the record, the jury could have reasonably arrived at the damages assessed in applying the above rule. Consequently, we are of the opinion that the damages were not excessive.

As causes 8 through 19 the appellant assigns error in the allowing of testimony by an attorney, Wayne Wimmer, in regards to the general practice of attorneys in personal injury suits. The witness was allowed to testify as an expert witness as to his opinion of the action that would have been taken by attorneys in and around the Elwood-Tipton area and also to what he would have done personally. Appellate cites *Knopp* v. *State* (1954), 233 Ind. 435, 438, 120 N. E. 2d 268, a case that was reversed because a witness was allowed to testify concerning a different contract than the one upon which the charge of fraud was based. In that case, however, the witness was not testifying as an expert, but merely as another party who had dealt with the defendant. To be a similar situation here, the witness would have to have testified concerning another and different release from the one here involved. It is apparent, therefore, that this argument by the appellant has no applicability in the case at bar. Appellant then contends that *McCoy* v. *General Glass Corp.* (1938), 106 Ind. App. 116, 125, 17 N. E. 2d 473, should control. In that case a coroner was erroneously allowed to testify as to his opinion of the cause of death of one McCoy, which opinion was shown to have been based upon secondhand or hearsay evidence. We are not here dealing with one single cause and effect, but with testimony of an expert concerning a general appraisal of what the legal status of the appellee's cause would be among local attorneys and what his own personal action would have been under similar circumstances. The evidence was not admitted to prove that

the adjuster made certain statements, but only to show that if the statements were made, such were false.

Nowhere is the competency of this witness attacked by the appellant. Ordinarily an expert must testify as to facts already presented by the evidence. *Mutual Life Ins. Co. of N. Y.* v. *Jay* (1942), 112 Ind. App. 383, 44 N. E. 2d 1020. It appears from the record that the witness' testimony preceded that of the appellee and at the time of the testimony the facts testified to were not before the jury. This may well have been error, but the subsequent introduction of the evidence renders the error harmless. *Mounsey, Admx.* v. *Bower* (1922), 78 Ind. App. 647, 136 N. E. 41. The witness was testifying of his own knowledge of the legal profession in his immediate area. An expert may testify as to the nature and conduct of businesses and occupations, 13 I.L.E., Evidence §274, p. 155.

Cause 15, excepted from above causes, propounds error upon the admission of Mr. Wimmer's testimony in regards to a hypothetical question relating to the husband's insurance covering hospital bills. This question, objection, court's ruling and answer are as follows:

"Q. Now Mr. Wimmer, on September 26, 1945, if a self-supporting woman, though she was married, who had incurred and paid all of her own bills, were injured in an automobile accident while riding as a passenger in a car which was owned and operated by her husband, and she had incurred hospital and doctor bills and the same, or part of them, were paid by her husband's insurance company under its medical expense provisions for occupants of his car but she had no other such insurance, would you be of the opinion that such a woman, if living in Tipton County or Madison County, could have found attorneys in either Tip-

ton or Elwood or both who would have been of the opinion that ways and means of legal basis could be found to bring an action to recover for her such hospital expenses on behalf of the injured lady?"

Objection: "To which the defendant objects for the reason that it asks for the construction of a contract and the written instrument is not introduced, identified or offered in evidence, nor is it in evidence. The witness is asked for the construction of a contract which, even though it had been identified, produced and introduced in evidence, would be a matter for the Court to determine and apply the law, and furthermore a person is presumed to know the law, and any representations that might have been made as to what the law was concerning the interpretation of a contract would not be a misrepresentation even though they were different than what the law actually was, nor would any of these matters be a basis for a suit for fraud."

The Court: "This is a hypothetical question of an expert and for that reason it may constitute his opinion on that. As an expert it is admissible as a hypothetical question. He may answer.

Overruled and exception."

A. "Yes."

Appellant contends that the witness was allowed to testify as to the interpretation of the insurance coverage. Neither the question nor the answer advance any construction upon the insurance in question, but merely refer to the possibility of the appellee's finding an attorney to handle her case. All cases cited by the appellant are concerned with interpretation of contracts, insurance policies, etc., and are inapplicable.

Causes 49 and 50 deal with objections to the testimony of the appellee concerning money advanced to her husband for use in the repair of his automobile. In cause 49, the question to appellee was: "Did you have any money in that car?", and her answer was: "I let him have $50 the day he was married."

Counsel for appellant then asked that the answer be stricken, which the court sustained in regards to any part of the money not connected with the car. The court made a proper ruling, for it is not error to overrule a motion to strike out all of an answer when part is competent. *The Evansville and Richmond Railroad Co.* v. *Swift* (1891), 128 Ind. 34, 27 N. E. 420; *Mueller* v. *Mueller* (1948), 118 Ind. App. 274, 78 N. E. 2d 667. In cause 50, the appellant objected to a question stating no reason for such objection, then asked that the answer be stricken. In order for any question to be preserved upon appeal an objection to any evidence must be specific in that a particular ground must be stated. *Craig, Exrx.* v. *Citizens Trust Company* (1940), 217 Ind. 434, 26 N. E. 2d 1006; *Beeler* v. *State* (1952), 230 Ind. 444, 104 N. E. 2d 744. To a large measure the materiality of evidence is a matter of the trial court's discretion. *State* v. *Lee* (1949), 227 Ind. 25, 83 N. E. 2d 778. The evidence appears to have legal competency in that it bears a definite relation to the complaint, thus the trial court cannot be said to have abused its discretion.

The same arguments put forward in appellant's brief under causes 51 through 61, all of which pertain to the overruling of objections to testimony of appellee on direct examination, are no different in substance from those presented upon the demurrer and causes 1 through 7. The trial court therefore acted properly in overruling the appellant's objections to the evidence presented.

Appellant assigns as cause 62 an error in allowing the appellee to testify concerning certain X-Ray pictures taken of appellee following the said accident. The court agrees with the appellant that such evidence can be introduced only by the prop-

er custodian which would most likely be a medically-trained person. In this case, however, the X-Ray pictures were not introduced and there was no testimony given other than the fact that some X-Ray pictures were taken, and this latter evidence was withdrawn. Appellant points out no prejudicial inferences that might be drawn from this item, and this court therefore will assume none.

Appellant's cause 63 deals with instructions requested by appellant and refused by the trial court. Proposed instructions 6, 8, 13, 15, 16, 20, 22, 23, 24, 27, 28, and 32, are sufficiently dealt with by other instructions submitted either by appellant or appellee which were given to the jury. The refusal of an instruction which is substantially covered by another instruction is proper. *Ohio Electric R. Co.* v. *Lease* (1918), 187 Ind. 668, 121 N. E. 1; *Kempf* v. *Himsel* (1951), 121 Ind. App. 488, 98 N. E. 2d 200; *Taylor* v. *Fitzpatrick, supra.* Even if the instruction refused appears more appropriate than the one given, there is no reversible error. *Knapp* v. *State,* (1907), 168 Ind. 153, 79 N. E. 1076; *Kokomo Brass Works* v. *Doran* (1914), 59 Ind. App. 583, 105 N. E. 167.

Further error is assigned for refusal of the appellant's instructions 18, 21, 25, and 42. The same or strikingly similar contentions are raised in these instructions as found in the appellant's causes numbers 2, 3, 4, 6, and 7, which have been dealt with previously, and we find no merit to appellant's argument.

The refusal of instructions 1, 35, 36, 38, 39, 40, 41, 43, and 44, is assigned as error under the same contentions embodied in appellant's demurrer which has already been discussed under the first assignment of error. Appellant has failed in his brief

to comply with Supreme Court Rule 2-17(e) in that he failed—

" 'in exhibiting clearly the points of fact and of law being presented, and how they are applicable, citing authorities and statutes relied upon. . . .' Mere proposition of law is quoted and citations given. The appellant has altogether failed to apply the cases cited to the facts of the instant case and the application thereof." *Justice* v. *Tripp* (1959), 130 Ind. App. 187, 158 N. E. 2d 809.

Appellant also contends that the failure to read the release to the jury under the heading of instruction No. 10 was error. Appellant cites authority which would allow the pleadings to be read to the jury. Flanagan, Wiltrout & Hamilton's, *Indiana Trial & Appellate Practice,* §1510, p. 237, cited by appellant, does *not* say that a party as a matter of right may have evidence read to the jury by the way of instructions. The record shows that the release in question was entered into evidence and exhibited to the court and jury. Since the jury had ample opportunity to examine the release, it is difficult to conceive of how a failure to read the instrument later in the trial could prejudice appellant's cause.

The appellant continues by stating that the court committed error in refusing instruction number 26. This instruction dealt with the signing of the draft by the appellee and would preclude recovery if she had cashed it after a delay. This refusal was not error, for by refusing to rescind the contract and suing for damages for fraud, a person may retain what he has received. *Rochester Bridge Co.* v. *McNeill, supra; The Home Insurance Company* v. *Howard* (1887), 111 Ind. 544, 13 N. E. 103.

Appellant's proposed instruction number 29, which was refused, for all practical purposes would have

nullified rhetorical paragraphs 13, 15, 16, and 17 of appellee's complaint. There has appeared no previous attack upon these paragraphs of the complaint and no argument is here entered to contest their validity. The appellant contends that evidence concerning the disposition of the settlement draft would be collateral to the issues. Appellant cites *McKee et al* v. *Hasler et al.* (1951), 229 Ind. 437, 98 N. E. 2d 657, which states that it is not error to exclude evidence which is not material to the issues before the court. The complaint in the case at bar, however, puts the matter which has been contested as collateral squarely in issue. Therefore, the appellant must have shown where the allegations of rhetorical paragraphs 13, 15, 16, and 17, failed in order to be entitled to the requested instruction.

The appellant urges as error the submission to the jury of appellee's numbered instructions 1, 2, 5, 9, 15, 16, 20, 26, and 27.

A similar objection is made to appellee's instructions 1, 2, 5, and 27 as was made to the complaint and has been made throughout appellant's argument. It appears to be the appellant's contention that if statements are made to a party with whom an insurance adjuster is attempting to make a settlement, such statements are to be taken only as the mere opinion of the adjuster and that no party may recover against the insurance company even though he has relied upon the statements to his injury. To this effect appellant continually cites *Automobile Underwriters, Inc.* v. *Rich, supra*, (1944). It is again pointed out that that case was reversed for failure of the evidence to support the allegations. This case cites and quotes from *Rochester Bridge Co.* v. *McNeill, supra,* in that the circumstances of each case must govern. It is the

opinion of this court that the circumstances were such that the jury might find fraud. The objections to the above mentioned instructions are not well taken.

Appellee's instruction number 9 conforms to the rule of damages for fraud as previously stated. This instruction reads as follows:

"This is not a suit for damages for personal injuries but only relates to the reasonable value of the plaintiff's case for such injuries, if any, untried and unlitigated at the time of settlement, and you are only required in determining that value, if any, to judge from evidence what it reasonably should be worth as an unlitigated case."

The instruction speaks of the value of an unlitigated claim. *Automobile Underwriters, Inc.* v. *Rich, supra,* (1944), and *Rochester Bridge Co.* v. *McNeill, supra,* state the rule of damages to be the probable amount at which the parties would have arrived in the absence of overreaching. In other words, the settlement value of the claim. The settlement value of a claim is for all practical purposes the unlitigated value of that claim.

Instructions numbers 15 and 16 are objected to as relieving appellee of the duty to exercise reasonable care in regards to the auto-truck collision which promulgated this action. The instructions are hereby set out along with appellant's instruction number 37, which the court accepted:

Instruction No. 15—(Requested by appellee)—

"I instruct you that the law of the State of Indiana gives the right of way at an intersection of county roads, to that one of two vehicles, first entering the intersection, and if you find that the car in which the plaintiff was riding entered the intersection before the defendant's insured entered it, then, the insured would be guilty of negligence as

a matter of statutory law if entering the intersection until the car in which plaintiff was riding had cleared it, and would be guilty of negligence in driving at such speed, if he did, that he could not stop or slow down and permit the car in which the plaintiff was riding to proceed safely on through the intersection."

Instruction No. 16—(Requested by appellee)—

"If you find the car in which the plaintiff was riding and the truck entered the intersection at the same time, and that the truck was coming from the north and the car in which plaintiff was riding was coming from the west, then the law required the truck to yield the right of way and failure, if any, to do so would be negligence on the part of the driver of the truck as a matter of law for purposes of this case and as against defendant herein."

Instruction No. 37—(Requested by appellant)—

"You are further instructed that if you find from a fair preponderance of the evidence that the husband of the plaintiff was driving the automobile in which she was riding as her agent at the time of the accident, and at the time the plaintiff received her injuries, if you find she was injured, that it was the duty of plaintiff's husband as he proceeded east on Normandy Pike to keep a look out for vehicles on the Mary Hamm Road, and if at said time plaintiff's husband did not exercise due care and thereby contributed to, or was proximate cause of said accident and injuries sustained by plaintiff, then in that event the plainttiff would not be entitled to recover against defendant and your verdict should in that event be for the defendant."

Burns' Ind. Stat., §47-2026, is set out to show that the instructions fairly cover the entire subject and are not prejudicial to appellant:

"Approaching or entering intersection (a) The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has

entered the intersection from a different highway. (b) When two [2] vehicles enter an intersection from different highways at the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right. (c) The foregoing rules are modified at through highways and otherwise as hereinafter stated in this article [§§47-2026 —47-2030]."

*Kraning* v. *Bloxson, Admx.* (1937), 103 Ind. App. 660, 5 N. E. 2d 649, 9 N. E. 2d 107, is cited by appellant. In this case the court explains the statutory duty of vehicles at intersections, then states:

"We have carefully examined these instructions. They contain correct statements of principles of law for the guidance of the jury in its deliberations in the instant case and, when examined in their entirety and in connection with other instructions given to the jury, were not erroneous. 'The verbal niceties and fine distinctions which analytical minds are capable of making in the use of words are not to be envoked to hamper trial courts, and to work reversals in this court, when, it is plain that a man of ordinary understanding would not be misled.' *Mishler* v. *Chicago etc. Co.* (1918), 188 Ind. 189, 195, 122 N. E. 675."

Appellee's instruction number 20, given by the court, is claimed to be erroneous by appellant because it is the theory of collusion between adjuster and appellee's husband, rather than fraud. This instruction and objection thereto reads as follows:

Instruction No. 20—(Requested by appellee)—

"If you find from a preponderance of the evidence that the plaintiff executed such release, which has been introduced in evidence, as the result entirely of some independent persuasion, compulsion or influence of the plaintiff's husband, Lawrence E. Smith, you are instructed that such acts upon the part of the said Lawrence E. Smith are not imputable to the defendant herein or the defendant's

agent or representative. And if you further find from a preponderance of the evidence that the plaintiff executed said release of her own free will and accord, or as a result of the statements or acts only of the plaintiff's husband, such acts would not constitute fraud upon the part of the defendant or the defendant's agent or representative. In such an event, the plaintiff would not be entitled to recover and your verdict should be for the defendant. On the other hand if the plaintiff's husband used means of persuasion or insistence in participating in an effort to induce plaintiff to execute said release, but plaintiff in executing was believing in and relying on fraudulent representation or representations of fact, if any such, made by the defendant's adjuster, and but for such belief, and reliance on the adjuster's representation, if any, would not have executed the agreement, then any attempted persuasion by her husband would not affect right of recovery if any, by her from the defendant by reason of its adjuster's misrepresentation, if any.

And further if you should find that plaintiff's husband and defendant were knowingly cooperating for defendant's and his mutual purposes and in a joint effort to induce settlement, then the fact that the husband attempted to employ his influence, if he did, would be no defense to the claim of fraud against the defendant in procuring such settlement."

Objection—

"Instruction No. 20 informs the jury that if they find there was collusion upon the part of the plaintiff's husband and the defendant's adjuster, the plaintiff would nevertheless recover from the defendant. The plaintiff's complaint is not predicated upon the theory of collusion between the plaintiff's husband and the defendant's adjuster and neither was the case tried upon such theory. There is no evidence in this cause that plaintiff's husband and defendant's adjuster cooperated for their mutual benefit in a joint effort to induce settlement. Said instruction is therefore not supported by the evidence and goes beyond the issues in said cause."

The complaint, however, denotes the husband's presence in the case. The record shows testimony by appellee, her husband, and appellant's adjuster, in regard to this matter. In addition to this, appellant's own instruction No. 12, given by the court, tells the jury that the husband's acts are not imputable to the defendant. This instruction reads as follows:

Instruction No. 12—(Requested by appellant)—

"If you find from a fair preponderance of the evidence that the plaintiff executed said release, which has been introduced as evidence, as the result of the persuasion, compulsion or influence of the plaintiff's husband Lawrence E. Smith, you are instructed that such acts upon the part of the said Lawrence E. Smith are not imputable to the defendant herein or the defendant's agent or representative. And if you further find from a preponderance of the evidence that the plaintiff executed said release of her own free will and accord, or as a result of the statements or acts of the plaintiff's husband, free from any recommendations of defendant's agent such acts do not constitute fraud upon the part of the defendant or the defendant's agent or representative. In such an event, the plaintiff would not be entitled to recover and your verdict should be for the defendant."

The instruction objected to is a mere extension or further statement of appellant's instruction No. 12. It was said in *Acme-Evans Co.* v. *Schnepf* (1938), 105 Ind. App. 475, 479, 15 N. E. 2d 742—

"A party litigant, either plaintiff or defendant, is entitled to have the jury instructed upon its theory of the case, if supported by some evidence and within the issues tendered."

A jury may also be instructed as to the theory of the other party's defense. *Mitchell* v. *Godsey* (1941), 109 Ind. App. 399, 402, 32 N. E. 2d 745.

Appellant complains that appellee's instruction No. 26, given by the court, injects the theory of mistake into the case. This instruction and objection thereto read as follows:

Instruction No. 26—(Requested by appellee)—

"The mere fact that plaintiff's condition after the settlement turned out to be worse than she anticipated when making the settlement would not of itself be sufficient to entitle plaintiff to a verdict in her favor, but if you should find that she was caused by the alleged fraudulent inducement to make a mistake in her anticipation as to what her condition might reasonably be expected to be in the future, as a result of the accident, then the fact, if it is a fact that she did not anticipate all the natural probable consequences of her injury would not affect her right, if any, in this action."

Objection—

"Defendant objects to Instruction No. 26 for the reason that this instruction injects the theory of mistake into the issues of said cause. Plaintiff's complaint is predicated upon fraud and the cause ¡was tried upon such theory of fraud, and mistake has not been and is not an issue in said cause."

It cannot be said that the use of the word "mistake" in this instruction, when the entire passage is read, propounds the theory of mistake rather than fraud. As previously discussed a wrongfully induced mistake may be fraud. The instruction stated that a mere error on appellant's part in regard to her condition would not be enough to sustain this action. There is nothing which would lead a reasonable man to be misled as to the theory of this case by this instruction.

After having given careful consideration to each objection proposed by appellant, we fail to find any

justifiable grounds for reversing this cause. In our opinion it has been fairly tried, and it would not serve the end of justice to require the appellee to go into court for a third trial, particularly in view of the fact that at both of these trials the separate juries have both given a verdict for appellee.

Judgment affirmed.

Myers, C. J., and Cooper and Ryan, JJ., concur.

## ON PETITION FOR REHEARING

Ax, P. J.—The appellant by its purported petition for rehearing has presented no issue for the consideration of this court by reason of its failure to comply with Rule 2-22 of our Supreme and Appellate Courts in "stating concisely the reasons *why* the decision is thought to be erroneous."

Appellant has merely stated seventeen conclusions in its petition, none of which concisely point out *why* the decision of our court is thought to be erroneous.

A petition for a rehearing, under the rules of appellate procedure, is a pleading and not a mere argument or brief. *The Baltimore, etc., R. W. Co. v. Conoyer* (1897), 149 Ind. 524, 532, 48 N. E. 352.

"A petition for rehearing is for the purpose of giving the appellate court an opportunity to correct its own omissions or errors by having them called to its attention. The petition should ask for a rehearing only on points which were properly presented at the first hearing and were overlooked or improperly decided. State Board of Tax Com'rs. v. Stanley (1952) 231 Ind. 338, 108 N. E. 2d 624." Flanagan, Wiltrout & Hamilton's, *Indiana Trial and Appellate Practice,* (1959 Supp.), Ch. 57, §2824, p. 129.

In the case of *Miller, etc.* v. *Ortman, etc., et al.* (1956), 235 Ind. 641, 136 N. E. 2d 17, Judge Achor, speaking for the Supreme Court, in substance declared that petitions for rehearing consisting only of reargument of the respective cases on their merits, without the benefit of any concise statement of the reasons *why* the respective decisions were thought to be erroneous, presents no issue any more than would the argument portion of a brief without the assignment of errors.

In the case of *Dorweiler et al.* v. *Sinks et al.* (1958), 238 Ind. 368, 371, 151 N. E. 2d 142, again Judge Achor, speaking for the court on petition for rehearing where arguments followed in the same paragraph containing the reason why the decision was thought to be erroneous, stated, "Arguments so presented must be ignored as surplusage, and *reasons for rehearing not supported by argument must be considered waived.*" If we take the latter part of this statement at its apparent meaning, then it becomes necessary for all petitions for rehearing to be supported by argument. The purported petition for rehearing filed in this case must also fail for non-compliance with this statement of law, although Rule 2-22 does not specifically so state.

In order that lawyers in Indiana and also this court may be guided in the future, we are setting forth the appellant's purported petition for rehearing:

"Appellant respectfully represents that the Court erred in its decision in the following respects:

1. The Court erred in holding that the trial court did not err in overruling the appellant's motion to withdraw from the consideration of the jury certain allegations in appellee's complaint.
2. The Court erred in holding that the trial court did not err in overruling appellant's motion

for directed verdict at the conclusion of appellee's evidence.

3. The Court erred in holding that the trial court did not err in overruling the appellant's motion for a directed verdict at the conclusion of all the evidence.

4. The Court erred in holding that the trial court did not err in overruling the appellant's motion made at the conclusion of all the evidence to withdraw from the consideration of the jury certain allegations in the appellee's complaint.

5. The Court erred in holding that the verdict of the jury was sustained by sufficient evidence.

6. The Court erred in holding that the verdict of the jury was not contrary to law.

7. The Court erred in holding in effect that appellant waived the issue that appellee had failed to prove her right to damages for negligence against the Fear Campbell Company, appellant's assured.

8. The Court erred in holding in effect that the appellee had a right to rely upon the appellant's adjuster's statements in reference to her physical condition when the record discloses that the appellee had ample opportunity to and did visit doctors of her own choosing and was better informed as to her physical condition than appellant's adjuster.

9. The Court erred in holding that the testimony of appellee concerning her subsequent medical treatments and visits to various hospitals was competent on the issue of measure of damages.

10. The Court erred in holding that the testimony of the witness Wayne Wimmer was competent, relevant and had probative value.

11. The Court erred in holding that the testimony of the witness Wayne Wimmer concerning payments received by the appellee for medical expense under the provisions of the insurance policy on her husband's automobile were competent and relevant.

12. The Court erred in holding that the testimony of the appellee concerning money advanced her husband for the repair of his automobile was competent.

13. The Court erred in holding that the testimony of the appellee, Amanda Smith, concerning the alleged misrepresentation and fraudulent acts of appellant's adjuster were competent and had probative value.

14. The Court erred in holding that the testimony of the appellee concerning her x-ray pictures was competent.

15. The Court erred in holding that the trial court did not err in refusing to give the instructions tendered and requested by appellant.

16. The Court erred in holding that the trial court did not err in giving the instructions tendered and requested by the appellee.

17. The Court erred in holding and deciding that the decision of the Supreme Court in the case of Automobile Underwriters, Inc. vs. Delma Rich (1943), 222 Ind. 384 was not controlling and decisive of the issues in this cause.

WHEREFORE, Appellant asks that a rehearing be granted in this cause and that said cause be thereupon reversed."

The matters set forth above in the purported petition are in substance a restatement of the grounds asserted in the appellant's motion for a new trial and constitute nothing but an attempted reargument of the same maters disposed of in our opinion.

We are holding that none of the above reasons comply with Rule 2-22. The Rules of the Supreme Court have the force and effect of laws and are binding on the courts as well as litigants. *Guthrie* v. *Blakely et al.* (1955), 127 Ind. App. 119, 141, 130 N. E. 2d 62, 131 N. E. 2d 357, (Rehearing denied January 19, 1956, T. D. December 21, 1956), and cases cited therein.

Petition for rehearing dismissed.

NOTE.—Reported in 166 N. E. 2d 341. Rehearing dis-

missed, 167 N. E. 2d 882. Transfer denied, 171 N. E. 2d 823.